IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER BAUM, | ) | CASE NO. 1:25-cv-01775-CEF |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## I.      Introduction

Plaintiff Jennifer Baum ("Baum") seeks judicial review of the final decision of the

Commissioner of Social Security, denying her application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C.

§§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ")

applied proper legal standards, I recommend that the Commissioner's final decision denying

Baum's DIB be affirmed.

## II.      Procedural History

Baum protectively filed for filed for DIB on June 26, 2023, alleging a disability onset

date of February 1, 2021. (Tr. 166). The claims were denied initially and on reconsideration. (Tr.

75, 87). Baum then requested a hearing before an ALJ. (Tr. 111-12). Baum, represented by

counsel, and a Vocational Expert ("VE") testified before an ALJ on September 26, 2024. (Tr. 58-

81). At the hearing, and in a subsequent written request, Baum moved to amend the alleged onset

date to December 16, 2022. (Tr. 37, 187). On October 4, 2024, the ALJ issued a written decision

finding Baum not disabled. (Tr. 14-28). The Appeals Council denied her request for review on

1

July 2, 2025, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; see 20 C.F.R. §§ 404.955, 404.981). Baum timely filed this action on August 26, 2025. (ECF Doc. 1).

**III. Evidence**

**A. Personal, Educational, and Vocational Evidence**

Baum was born January 7, 1971. (Tr. 166). She was 51 years old on her alleged onset date, making her an individual of advanced age according to agency regulations. (Tr. 69). She has at least a high school education. (Tr. 38). She has past relevant work as a compliance officer, DOT #250.257-018, sedentary exertional level with an SVP of 7, and as a finance advisor, DOT #250.257-015, sedentary exertional level with an SVP of 8. (Tr. 26).

**B. Relevant Medical Evidence**

On July 6, 2020, Baum underwent a laparoscopic right salpingo-oophorectomy following the discovery of a benign cyst on her right ovary. (Tr. 869). An ultrasound performed the following day showed a left ovarian cyst. (Tr. 841). Baum had a trans-vaginal ultrasound on January 19, 2021, which revealed a complex left ovarian cyst consistent with hemorrhagic cyst and a thick endometrium. (*Id.*). An abdominal CT on January 21, 2021 showed wall thickening involving the ascending and proximal transverse colon, suggesting colitis; fatty infiltration of the liver; hiatal hernia; narrowed but patent celiac artery; and possible left ovarian lesion. (Tr. 842). At a consultation for adnexal mass, Baum reported diffuse pelvic pain for a year radiating to her rectum. (Tr. 841). She was assessed with adnexal mass, abnormal uterine bleeding and outer defecatory and voiding dysfunctions. (Tr. 845).

Baum presented at the Hillcrest Hospital Emergency Department on February 18, 2021 complaining of lower abdominal pain for over two years that has been getting progressively

worse, and difficulty urinating. (Tr. 818). She reported her pain at 7+/10, and reported that she drinks 1-1.5 pints of honey whiskey daily. (Tr. 820). An abdominal CT revealed findings consistent with acute pancreatitis, a small amount of free fluid, and bilateral nephrolithiasis, with no hydronephrosis identified. (Tr. 823). Baum was assessed with an acute kidney injury; sepsis, due to unspecified organism, unspecified whether acute organ dysfunction was present; generalized abdominal pain; acute pancreatitis, unspecified complication status, unspecified pancreatitis type; pancreatitis; and alcohol use. (Tr. 824). She remained hospitalized until February 21, 2021. (Tr. 818).

Baum had a PAP smear on March 19, 2021, which was HPV positive. (Tr. 805). She then underwent a hysteroscopy and endometrial biopsy on May 4, 2021 (Tr. 803-04), which showed endometrial hyperplasia without atypia, suggestive of endometrial polyp. (Tr. 802). She was referred for polyp removal, and considered a hysterectomy. (*Id.*).

On July 12, 2021, Baum attended a appointment with Cara King, D.O., of the Cleveland Clinic Women's Health Institute. (Tr. 796-800). Dr. King assessed Baum with endometrial hyperplasia without atypia and recommended a hysteroscopic polypectomy, endometrial curettage and Mirena IUD insertion. (Tr. 799). Baum was assessed with sinus tachycardia following a borderline ECG on September 30, 2021. (Tr. 1009). Baum was scheduled for her polypectomy, but the procedure was cancelled after her pre-operative toxicology screen on October 5, 2021 was positive for cocaine, methamphetamines and THC, and showed her to be hypertensive with a blood pressure of 158/109. (Tr. 782). The procedure was performed on October 14, 2021. (Tr. 779-80).

Baum presented to the Emergency Department on July 4, 2022 complaining of diffuse abdominal pain which she attributed to doing more physical labor recently than she normally

3

does. (Tr. 619). She reported that the pain was originally at 6/10 on the pain scale, but it was currently 10/10, and had been waxing and waning. (*Id.*). She endorsed nausea, but no vomiting, and stated she drinks half of a bottle of liquor daily, uses marijuana daily and smokes a pack of cigarettes per day. (*Id.*). An abdominal CT was performed which showed an abnormal enlargement of the pancreatic head with surrounding fat stranding with associated wall thickening the second portion of the duodenum, and was suggestive of acute pancreatitis. (Tr. 659). Baum was assessed with acute pancreatitis; acute kidney injury; hyponatremia; hypercalcemia; dehydration; alcohol intoxication/abuse; and tobacco use. (Tr. 573). A right upper quadrant ultrasound on July 5, 2022 showed the pancreas significantly obscured by overlying bowel gas, with the anterior aspect of the pancreatic head very heterogenous in echotexture to slightly decreased in echotexture suggesting edema; right kidney demonstrating prominence of the renal pyramids with increased echogenicity of the renal cortex that may be due to renal disease; and diffuse hepatic steatosis. (Tr. 580).

Baum presented at the MetroHealth Emergency Department on September 7, 2022 for evaluation of a syncopal event. (Tr. 281-85). She stated that she had felt lightheaded for three or four days, worse when standing or walking, then passed out at her desk at work. (Tr. 281). She reported daily alcohol use and twice daily cocaine use. (*Id.*). Baum reports that she lost consciousness, and since arousing she has had diaphoresis, nausea and vomiting, and currently had mild epigastric pain without vomiting. (Tr. 283). She was assessed with unspecified syncope and acute kidney injury, and left the hospital against medical advice. (Tr. 285).

Baum next appeared at the TriPoint Medical Center on September 15, 2022, complaining of abdominal pain, similar to her past bouts with pancreatitis. (Tr. 472). She reports the pain is severe, and she cannot keep anything down. (*Id.*). Baum was assessed with acute pancreatitis,

most likely alcohol induced; dehydration; hypercalcemia; hyponatremia; acute kidney injury/chronic kidney disease; tobacco use; and alcohol abuse. (Tr. 474). Her renal failure was described as prerenal, resolved with IV fluids. (Tr. 490). A renal ultrasound performed on September 16, 2022 was unremarkable. (Tr. 479). A pancreatic MRI on September 29, 2022 showed changes of pancreatitis centered along the pancreaticoduodenal groove, with a small area of nonenhancement along the groove, probably necrosis. (Tr. 997).

Baum went to the Euclid Hospital Emergency Department on October 3, 2022 with chief complaints of epigastric abdominal pain, nausea and vomiting, and noting that she had been drinking alcohol, smoking marijuana and using cocaine. (Tr. 761). Clinical impressions were elevated serum creatine; hyponatremia; alcohol-induced chronic pancreatitis; nausea and vomiting, unspecified vomiting type. (Tr. 764). Her symptoms improved with medication. (Tr. 765).

Baum attended a consultation concerning her elevated creatine with Mari Llanos, D.O., of the Cleveland Clinic Nephrology and Hypertension Institute on October 26, 2022. (Tr. 755-59). Dr. Llanos assessed her with drug abuse; alcohol abuse; recurrent pancreatitis; and essential hypertension. (Tr. 758). To address her ongoing abdominal pain, Baum underwent a left celiac plexus block procedure on January 23, 2023 (Tr. 745) and a right celiac plexus block procedure on March 29, 2023. (Tr. 738).

Baum presented at the TriPoint Medical Center Emergency Department on May 17, 2023, with complaints of abdominal pain for the past three days with associated nausea and vomiting. (Tr. 332). She reported she had reduced her alcohol intake to about half a glass of whiskey per day, and that she had last used marijuana and cocaine three days prior. (Tr. 333). She was admitted to the hospital with a diagnosis of pancreatitis. (Tr. 335). An abdomen/pelvic

5

CT showed enlargement of the hypodense/indistinct pancreatic head, with prominent pancreatic duct and peripancreatic fat stranding, suggestive of recurrent acute on chronic pancreatitis. (Tr. 343). The CT further showed associated inflammatory changes encasing the duodenal bulbs and C-loop with wall thickening and mucosal edema, raising the possibility of peptic ulcer disease with duodenal bulb ulcer penetrating the pancreatic head resulting in pancreatitis. (*Id.*). She was assessed with acute pancreatitis, peptic ulcer disease and a duodenal ulcer. (Tr. 344).

On July 26, 2023, Baum presented for a Loop Electrosurgical Excision Procedure ("LEEP") after a diagnosis of cervical dysplasia and/or HPV on cervical cytology and colposcopically directed biopsy. (Tr. 673). The pathology from this procedure showed minute fragments of atypical glandular epithelium compatible with origin from adenocarcinoma. (Tr. 730). Given the possible adenocarcinoma of the cervix, the pathology was recommended for review by the Cleveland Clinic tumor board, with Baum to consider undergoing either a re-cone or a hysterectomy. (Tr. 733). Baum opted for a cold knife conization and endocervical curettage, which was performed on September 28, 2023. (Tr. 1122). The procedure demonstrated a well-demarcated and rounded endocervical glands with cellular stratification, nuclear hyperchromasia, and focally associated apical mitotic figures and apoptotic bodies, consistent with adenocarcinoma in situ, and with no evidence of invasive disease. (Tr. 1116). The surgical margins were negative for adenocarcinoma. (*Id.*).

Baum's PAP smear on September 4, 2024 showed scant amount of superficial squamous epithelium, with no dysplasia identified. (Tr. 1865). It was negative for intraepithelial lesion or malignancy. (Tr. 1866).

### C.  Medical Opinion Evidence

#### 1.  State Agency Reviewing Opinion Evidence

On October 11, 2023, state agency reviewing physician Gary Hinzman, M.D., found that there was insufficient evidence to form an opinion. (Tr. 71-72). On March 4, 2024, state agency reviewing physician Leon Hughes, M.D., opined that Baum could perform work at the medium exertional level except that she could frequently climb ramps or stairs, balance or crawl, and could have no exposure to hazards such as unprotected heights and dangerous machinery. (Tr. 82-83).

On October 20, 2023, state agency reviewing psychologist Audrey Todd, Ph.D., determined there was insufficient evidence to form an opinion. (Tr. 72). On February 29, 2024, state agency reviewing psychologist Ellen Rozenfeld, Psy.D., opined that Baum had moderate limitations in the domains of interacting with others; concentrating, persisting and maintaining pace; and adapting or managing oneself. (Tr. 79). Dr. Rozenfeld further determined that Baum had moderate limitations in her abilities to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting. (Tr. 83-84).

#### 2.  Consultative Examination

On January 22, 2024, Baum attended a mental health consultative examination with Sarah Chessar-Tirpak, Psy.D. (Tr. 1175-81). Dr. Chessar-Tirpak diagnosed BaumBaum with

7

Major Depressive Disorder, Recurrent, Moderate, and Generalized Anxiety Disorder. (Tr. 1180). Dr. Chessar-Tirpak opined that Baum's abilities to acquire and use information, to attend to and complete tasks, to interact and relate with others, to respond appropriately to supervision and to coworkers in a work setting, and to respond appropriately to work pressures, were all below that of a typically-developing individual. (Tr. 1180-81). She further opined that Baum's ability to partake in self carecare was slightly below that of typically developing individuals of the same age. (Tr. 1180).

### D.    Administrative Hearing Evidence

Baum testified before an ALJ on September 26, 2024. (Tr. 40-60). Baum testified that she was 53 years old, and that she held a bachelor's degree in business administration with a finance major. (Tr. 40). Baum also held several professional licenses and designations. (Tr. 41). She can drive, but her fiancée generally takes her to her appointments. (*Id.*). She has not worked since December 15, 2022 when she was let go from her last job due to absenteeism. (*Id.*).

Baum stated she has not worked since 2022 because she is in pain all day, every day. (Tr. 47). She has had bouts of acute pancreatitis four or five times, and after the thirdthird event, a test revealed necrosis in part of her pancreas. (*Id.*). She had two celiac plexus nerve blocks in 2023 which helped with the abdominal pain. (*Id.*). At times she will develop severe cramps, and she has diarrhea and vomiting daily. (*Id.*). She attributes the vomiting to her hiatal hernia. (*Id.*). She often throws up anything she eats, and spends most of her time in the restroom. (Tr. 47-48).

Baum further testified that her anxiety has increased tremendously, and it can even arise when she is at home, and without an identifiable trigger. (Tr. 48). It automatically kicks in anytime she has to leave home. (*Id.*). Her anxiety has been heightened by her sinus tachycardia,

8

and she has a resting heart rate over 100. (*Id.*). She can often feel her heart race or go out of rhythm. (*Id.*). Generally, if she is not in the restroom she tends to be asleep. (Tr. 49).

Baum added that she has been diagnosed with cervical cancer, and has had two procedures to address it, including a LEEP procedure and colon surgery. (*Id.*). She is having PAP tests every six months, but may someday need a hysterectomy. (*Id.*). She currently has three polyps in her uterus in addition to the adenocarcinoma in situ. (Tr. 50). She is not currently undergoing any other treatment for this condition nor is she undergoing any treatment for her sinus tachycardia. (Tr. 50-51). Due to her pancreatitis, Baum is avoiding fatty foods, red meat, fried food and alcohol, and she takes gabapentin both for her pain and her anxiety. (Tr. 51-52). She has not used cocaine for a year and a half, but she smokes marijuana and still has one alcoholic beverage nightly with her melatonin to help her sleep. (Tr. 52-53).

Baum reported that her fiancée does most of the household chores, while she is mostly in her bed all day. (Tr. 53). She will watch television while in bed, and finds she is much more comfortable if she lies horizontally as opposed to sitting or standing vertically. (*Id.*). She will also pay bills over her phone while laying down. (Tr. 54). She does not socialize at all, and does not even engage in activities with her fiancée, as he will generally sit in the living room while she is in the bedroom. (*Id.*).

Under questioning by her attorney, Baum testified she does not do any treatment for her mental health beyond taking gabapentin. (Tr. 55). She has not had any counseling or therapy. (Tr. 56). She feels she is depressed because she is secluded and she no longer feels useful. (*Id.*). Baum reports that when she walks in her house she puts her hand on a wall or a counter to maintain her balance. (*Id.*). If she leaves home she will use a cane for balance when walking, and

9

she is limited in how long she can stand in one place. (Tr. 57). She is able to lift a 20 pound bag of kitty litter. (Tr. 58).

Once Baum's testimony concluded, VE George Coleman testified. (Tr. 60-67). VE Coleman testified that Baum's past work included compliance officer, DOT #25.257-018, sedentary, SVP 7; and financial advisor, DOT #250.257-014, sedentary, SVP 8. (Tr. 62). The ALJ then posed her only hypothetical, asking VE Coleman to consider an individual of Baum's age, with her level of education and past work, who could perform medium work with the limitations that she could frequently climb ramps or stairs but never climb ladders, ropes or scaffolds; she could frequently balance or crawl; and she could never be exposed to unprotected heights and dangerous machinery. (Tr. 62-63). The VE testified that "within those parameters the essential functions of those two job titles – DOT's that classified them would not performed within those parameters." The VE opined that the hypothetical individual would be able to work as a laundry worker, DOT #361.685-018, medium, SVP 2, with 125,000 positions in the national economy; as a linen room attendant, DOT #222.387-030, medium, SVP 2, with 52,220 positions in the national economy, and as a kitchen helper, DOT #317.687-010, medium, SVP 2, with 386,170 positions in the national economy. (Tr. 63-64).

Baum's attorney then inquired about the job numbers that would be available if that individual required a cane for balancing ambulation. (Tr. 64). The VE opined that for medium work the use of a cane would require an accommodation, and would not be consistent with competitive employment. (Id.). VE Coleman further testified that the requirement of a cane for balancing ambulation would also require an accommodation at the light exertional level, so there would be no jobs if the exertional level were so reduced. (Tr. 65). VE Coleman also testified that if an employee is consistently off task more than 10% of the workday, or is consistently absent

10

more than once per month, that would be work preclusive. (*Id.*). If an employee requires two breaks in addition to the regularly scheduled breaks that would also be work prohibitive. (Tr. 66). If the employee needs to arrive late or leave work early, that would require a work accommodation, so it is also inconsistent with competitive work. (Tr. 67).

## IV.    The ALJ's Decision

In her decision dated June 26, 2024, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2026.

2.    The claimant has not engaged in substantial gainful activity since December 16, 2022, the amended onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following medical impairments: malingnant neoplasm of ovary, uterine adnexa and other disorders of the gastrointestinal system (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she is able to frequently climb ramps and stairs, balance and crawl but never climb ladders, ropes or scaffolds. She must avoid exposure to hazards such as unprotected heights and dangerous machinery.

6.    The claimant is capable of performing past relevant work as a compliance officer and finance advisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from December 16, 2022, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 19-28).

## V.        Law and Analysis

### A.        Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1.        whether the claimant is engaged in substantial gainful activity;

2.        if not, whether the claimant has a severe impairment or combination of impairments;

3.        if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4.        if not, whether the claimant can perform their past relevant work in light of his RFC; and

5.        if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v)[1]; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B.        Standard of Review

This Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable

---

[1] The regulations governing DIB claims are found in 20 C.F.R. § 404, *et seq.* and the regulations governing SSI claims are found in 20 C.F.R. § 416, *et seq.* Generally, these regulations are duplicates and establish the same analytical framework. For ease of analysis, I will cite only to the relevant regulations in 20 C.F.R. § 404, *et seq.* unless there is a relevant difference in the regulations.

mind might accept as adequate to support a conclusion.'" *Id.*, quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the

court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012).

## VI.    Discussion

Baum raises three issues for this Court's review:

1.  Did the ALJ properly evaluate the opinions of the state agency medical consultants?

2.  Did the ALJ establish all of Baum's severe and non-severe impairments into the RFC?

3.  Did the ALJ sufficiently address Baum's subjective complaints?

(ECF Doc. 9, p. 1).

### 1.    The ALJ properly evaluated the opinion of the state agency medical consultants.

Baum contends that the ALJ found state agency reviewing psychologist Ellen Rozenfeld's opinion unpersuasive without properly discussing the impairments upon which she based her opinion, or the source of her opinion. (*Id.* at p. 8). The ALJ, per Baum, rejected Dr. Rozenfeld's opinion "in part due to a lack of mental health treatment, and normal findings from clinical providers who were not evaluating mental health." (*Id.*). Baum argues that the ALJ did not explain why the findings cited within Dr. Rozenfeld's opinion were insufficient to support her opinion. (*Id.* at pp. 8-9). Baum argues the ALJ failed to discuss whether Dr. Rozenfeld's opinion was consistent with that of the consultative examiner, Dr. Chessar-Tirpek, upon whose examination Dr. Rozenfeld based her findings. (*Id.* at p. 9).  Baum also suggests that the evaluation of Dr. Chessar-Tirpek's opinion was insufficient. (*Id.*). Had the ALJ adopted Dr. Rozenfeld's opinion, Baum asserts that she would have been found incapable of performing her past work, and incapable of performing at least one of the other jobs cited by the VE at the hearing, kitchen helper, and therefore would have been found disabled. (*Id.* at pp. 9-10).

14

In response, the Commissioner argues that the ALJ properly addressed the key factors of supportability and consistency when evaluating Dr. Rozenfeld's opinion. (ECF Doc. 10, pp. 13-14). The Commissioner contends that the ALJ addressed supportability by explaining why the objective evidence cited by Dr. Rozenfeld was insufficient to support her findings, and addressed consistency by considering Baum's lack of treatment for her mental health as well as the evidence contained in the consultative examination. (*Id.*). Further, while the Commissioner asserts that the ALJ did address the findings of the consultative examiner when assessing Dr. Rozenfeld's opinion, he further argues that the ALJ also independently addressed the opinion of the consultative examiner and found it also unpersuasive. (*Id.*). The Commissioner contends that the ALJ's assessment of the consultative examiner's opinion was also supported by substantial evidence. (*Id.* at pp. 14-16).

The evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. This regulation mandates that the ALJ "will not defer or give any evidentiary weight, including controlling weight to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a). Rather, the ALJ must evaluate each medical opinion's persuasiveness based on its: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and, (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c); *see also Heather B. v. Comm'r of Soc. Sec.,* No. 3:20-cv-442, 2022 WL 3445856 (S.D. Ohio Aug. 17, 2022). Supportability and consistency are the most important factors; ALJs must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in [their] determination or decision." 20 C.F.R. § 404.1520c(b)(2). ALJs "may, but are not required to," consider factors three through five when evaluating medical source opinions. (*Id.*).

15

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and non-medical sources in the claim, the more persuasive the medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(c)(2).

An ALJ must "provide a coherent explanation of his [or her] reasoning. *Lester v. Saul*, No. 5:20-cv-01364, 20 WL 8093313 at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom., Lester v. Comm'r of Soc. Sec.,* No. 5:20-cv-01364. 2021 WL 119287 (N.D Ohio, Jan. 13, 2021). The ALJ's medical source opinion evaluation must contain a "minimum level of articulation" to "provide sufficient rationale for a reviewing adjudicator or court." *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 2017 WL 168819, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)., 2017 WL 168819, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017). If an ALJ does not "meet these minimum levels of articulation," it "frustrates this [C]ourt's ability to determine whether her disability determination was supported by substantial evidence." *Heather B.*, 2022 WL 3445856, at *3, *citing Warren I. v. Comm'r of Soc. Sec.,* No. 5:20-cv-495, 2021 WL 860506, at *8 (N.D.N.Y., Mar. 8, 2021).

### a.  Dr. Ellen Rozenfeld

In her evaluation of Dr. Rozenfeld's opinion, the ALJ wrote:

> The prior administrative medical finding is not persuasive because her review and summary of the evidence that shows a normal affect, logical thoughts, adequate memory and adequate skills for sustaining attention/concentration supports no more than mild limitations. This is consistent with the claimant's treatment notes that show complaints of stress-related anxiety, but there was little evidence of treatment for a mental impairment. Examinations showed her affect was normal, and she presented as pleasant/cooperative. There were no deficits in her memory

16

> and her attention was normal. Although a history of substance abuse is documented in the record, her symptoms remained during periods of diminished substance use.

(Tr. 25). The ALJ addressed the factor of supportability by noting that Dr. Rozenfeld's review and summary of the evidence was incongruent with the moderate limitations espoused in her opinion. Rather, the ALJ felt Dr. Rozenfeld's assessment of the evidence supported only mild limitations, and therefore this factor weighed in favor of the ALJ's finding that Dr. Rozenfeld's opinion was unpersuasive.

As to consistency, the ALJ considered examination notes in the record that addressed Baum's affect, presentation, memory and attention in determining that Dr. Rozenfeld's opinion was inconsistent with the evidence. Further, the ALJ considered the lack of treatment for mental impairments as another indication that the limitations opined were inconsistent with the record. ALJs are allowed to consider the nature of a plaintiff's treatment as a part of the consistency evaluation. *See Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302, at *4 (6th Cir. Apr. 9, 2024) (upholding the ALJ's consistency analysis where the ALJ found the opinion not consistent with the other evidence of record including the routine, conservative treatment received, the longitudinal mental status exams across multiple providers, and the claimant's ability to live independently). As agency regulations provide,

> If the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.

SSR 16-3p, 2017 WL 5180304, at *9. The ALJ was therefore free to consider the lack of treatment for mental impairments when evaluating the consistency of Dr. Rozenfeld's opinion with the record.

Baum argues that the ALJ erred in not addressing the consistency between Dr. Rozenfeld and Dr. Chessar-Tirpak's opinions. (ECF Doc. 9, p. 9). This argument is not compelling. As noted above, the ALJ was required to assess the supportability and consistency of the two opinions individually and provide a subsequent reviewer with a minimum level of articulation to allow for meaningful review of the determination of the persuasiveness of the opinion. *See Revisions to Rules Regarding the Evaluation of Medical Evidence.* In assessing each of the two opinions, the ALJ did such an assessment and provided sufficient articulation for such a review. This meets the ALJ's obligation as defined by 20 C.F.R. § 404.1520c. The ALJ was not required to specifically compare the consistency of the two opinions, rather, she was required to consider the consistency of Dr. Rozenfeld opinion to the record as a whole. 20 C.F.R. § 404.1520c.

The ALJ's assessment of Dr. Rozenfeld's opinion clearly addressed the critical factors of supportability and consistency. There is sufficient rationale provided for a reviewing adjudicator or court to determine that the evaluation of the opinion was supported by substantial evidence. Accordingly, I cannot recommend remand on this basis.

### b. Dr. Sarah Chessar-Tirpak

In assessing Dr. Chessar-Tirpak's opinion, the ALJ wrote:

> Dr. Chessar-Tirpak's opinion is not persuasive because she does not address specific work-related limitations. However, her findings of normal affect, alert/fully oriented, logical thinking, adequate memory and adequate attention/concentration support finding the claimant's mental impairments are non-severe (Exhibit 8F). This is consistent with the claimant's treatment notes that show complaints of stress-related anxiety, but there was little evidence of treatment for a mental impairment. Examinations showed her affect was normal, and she presented as pleasant/cooperative. There were no deficits in her memory, and her attention was normal.

(Tr. 24). The ALJ addressed the factors of supportability and consistency with regard to Dr. Chessar-Tirpak's opinion much as she did when considering Dr. Rozenfeld's opinion. Again,

with regard to supportability, the ALJ highlighted internal incongruity between consultative examination notes that show benign findings in affect, orientation, logical thinking, memory and attention/concentration, and the opinion that finds severe impairment. (*Id.*). The assessment of the supportability of Dr. Chessar-Tirpak's opinion further noted the failure to use vocational terms. (*Id.*). These concerns led to the ALJ's finding that Dr. Chessar-Tirpak's opinion was unsupported. (*Id.*).

When evaluating consistency, the ALJ compared Dr. Chessar-Tirpak's findings to examination notes found throughout the record and deemed them inconsistent. (*Id.*) The ALJ further noted that the relative lack of treatment for mental impairment was also inconsistent with the opinion. (*Id.*). As the key factors of supportability and consistency were considered, the ALJ met her burden of providing substantial evidence, allowing a subsequent reviewer to meaningfully assess the evaluation of Dr. Chessar-Tirpak's opinion. Accordingly, the ALJ's decision should not be disturbed on this basis.

### 2. The ALJ gave appropriate consideration to all impairments when determining Baum's RFC.

Baum next argues that the ALJ was required to consider all severe and non-severe impairments when determining her RFC, but overlooked functional limitations brought about by her mental health and pain symptoms caused by chronic pancreatitis. (ECF Doc. 9, pp.10-11). Baum acknowledges that the ALJ's RFC determination accounted for her limited ability to perform physical exertion, but contends that the ALJ's reliance on Baum's response to "conservative treatment" to address her abdominal pain symptoms is contradicted by the evidence. (*Id.* at p. 11). Without a fuller discussion of why the ALJ discounted her abdominal pain, Baum argues, it is unclear why there were not more significant limitations in the RFC, and this amounts to error warranting remand. (*Id.* at p. 12).

19

The Commissioner asserts that the ALJ properly considered Baum's mental health impairments and determined those impairments created no functional limitations that needed to be addressed in the RFC. (ECF Doc. 10, pp. 16-18). The Commissioner further argues that the ALJ considered Baum's allegations concerning abdominal pain caused by chronic pancreatitis but noted Baum's positive response to nerve blocks and how her symptoms resolved with conservative treatment, and formulated the RFC accordingly. (*Id.* at pp. 19-20). The ALJ also noted that Baum was described as "in no acute distress" when treated for pancreatitis, and she could perform some activities of daily living inconsistent with a need for greater limitation in the RFC. (*Id.* at p. 20). The Commissioner contends that the ALJ was justified in relying on the opinions of the state agency reviewing physicians in determining Baum's RFC. (*Id.* at p. 21).

At Step Two of the sequential evaluation, the ALJ considers the severity of a claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is "any impairment or combination of impairments which significantly limit . . . [a claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). To determine the severity of mental impairments, an ALJ rates a claimant's mental limitation using a five-point scale of "none, mild, moderate, marked, and extreme" in the following four broad functional areas: (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* §§ 404.1520a(c)–(d). If a claimant's limitation is rated as none or mild, then generally a claimant's "impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in . . . [a claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1).

Here, the ALJ provided ample evidence to support a finding that Baum's mental health impairments were not severe. The ALJ found no more than mild limitations in any of the four broad functional areas, writing:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has no limitation. On a Function Report, she noted no problems remembering and she did not need a reminder to tend to her personal care or take her medication. She also noted she is able to follow instructions okay and manage her own finances. During her hearing, she was able to recall background information, especially her employment and medical history. She testified she is able to use her phone to pay bills. Routine examinations showed no deficits in her memory, and she was able to answer questions appropriately. During a consultative evaluation, she demonstrated adequate memory for past and current school and family events. Her short-term memory was adequate, and she provided adequate responses for determining the similarities between objects and responding to situations requiring verbal conceptualization (Exhibits 6E, 4F/52, 8F/6, 9F/7, 11F/7, 12F/8).
>
> The next functional area is interacting with others. In this area, the claimant has mild limitation. On a Function Report, she noted no problem getting along with others, and she is able to shop in stores, but she does not socialize with anyone other than her boyfriend. She also noted she is able to keep in touch with her son and brother though text messages and phone calls. She testified she feels anxious when leaving home. Examinations showed some complaints of anxious moods, but her affect was normal, and she presented as cooperative/pleasant. She appeared to interact appropriately with her providers, and her behavior was appropriate. She was tearful during a consultative evaluation, but her affect was normal (Exhibits 6E, 4F/20, 8F/6, 9F/7, 11F/7, 12F/7-9).
>
> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. On a Function Report, she noted problems concentrating, and she does not always finish what she starts, but she is able to manage her finances and watch television. She testified she is able to drive, and she uses her phone to pay bills. Routine
> examinations showed her attention was normal. During a consultative evaluation, she demonstrated adequate skills for sustaining attention and concentration. She also demonstrated adequate cognitive resources for understanding and responding appropriately to interview questions (Exhibits 6E, 3F/12, 8F/6, 11F/8).
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. On a Function Report, she noted she is able to tend to her personal care and do minor cleaning, but her boyfriend prepares the meals. She also noted she is able to shop in stores, manage her finances and drive, but she does not handle stress well. She testified she is able to care for herself during the day

while her boyfriend works, and she is able to drive. She also testified she is able to pay bills on her phone and care for her cats, but her boyfriend does the cooking, cleaning and grocery shopping. During a consultative evaluation, she stated she could manage her own finances, prepare meals and drive, but her boyfriend did the grocery shopping (Exhibits 6E, 8F/6).

(Tr. 20-21). This is unquestionably sufficient evidence in support of the ALJ's finding that mental health impairments are not severe.

Baum argues that the ALJ erred by failing to address her mental health symptoms in the RFC, but "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Commissioner of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Def. Systems–Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999). Baum's objection does not point to any evidence  in the record showing how her mental health prevented her from performing basic work. Accordingly, the ALJ was under no obligation to address explicitly evidence relating to her mental health in the residual functional capacity, and this issue does not countenance remand.

With regard to abdominal pain from pancreatitis, pain is defined in SSR 16-3p not as an impairment, but as a symptom. Specifically, SSR 16-3p reads:

In determining whether an individual is disabled, *we consider all of the individual's symptoms, including pain,* and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record. We define a symptom as the individual's own description or statement of his or her physical or mental impairment(s). *Under our regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.* However, if an individual alleges impairment-related symptoms, we must evaluate those symptoms using a two-step process set forth in our regulations.

First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's

22

> ability to perform work-related activities for an adult or to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI disability claim.

SSR 16-3p (emphasis added). Thus, the discussion of whether the ALJ properly addressed pain when determining the RFC as more appropriately housed in the section below.

### 3. The ALJ properly assessed Baum's subjective complaints when determining her RFC.

Finally, Baum argues that the ALJ erred in not sufficiently addressing her subjective assertions of disabling pain. (ECF Doc. 9, p. 12). Baum contends that objective medical evidence confirms the severity of her pain, but the ALJ employed only "boilerplate language" to minimize the effects of that pain. (*Id.* at p. 14). Baum believes the ALJ inappropriately dismissed her pain on the basis of examination notes indicating she was in no acute distress, had good strength and was able to ambulate normally. (*Id.*). Baum argues that the ALJ further erred by failing to assess the functional capacity deficits she endures as a result of her frequent restroom visits brought about by diarrhea and vomiting. (*Id.* at pp. 14-15).

The Commissioner responds by noting that after her hospitalization for chronic pancreatitis in May 2023, her first hospitalization after the amended onset date, Baum did not return to the emergency department nor was she hospitalized. (ECF Doc. 10, p. 22). The Commissioner asserts that the ALJ acknowledged Baum's complaints regarding pain and considered those complaints in light of other evidence in the record, as she was required to do. (*Id.*). The ALJ, in the Commissioner's view, reasonably considered the allegations of disabling pain, but concluded that Baum's limitations relating to pain did not rise to the level suggested, and determined the RFC accordingly. (*Id.*).a The Commissioner also argues that the ALJ considered Baum's allegation of frequent restroom usage, but did not find that allegation to be

supported by the record, and therefore did not include corresponding limitations in the RFC. (*Id.*).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); SSR 16-3p. Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p. The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 WL 2465273, at *10 (N.D.

24

Ohio April 24, 2019) (*citing Rogers*, 486 F.3d at 248-49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

The ALJ clearly gave consideration to Baum's subjective complaints of disabling pain. Specifically, the ALJ noted Baum's treatment notes show complaints of abdominal pain due to pancreatitis, but also that examinations showed she was in no acute distress, she was able to ambulate normally, and she had good strength. (Tr. 26). The ALJ acknowledged Baum's hospitalization in May 2023 for pancreatitis, but wrote that "her symptoms resolved with conservative treatment and the remainder of her treatment was related to routine visits." (*Id.*). The ALJ added that there was no evidence that Baum used an assistive device "and the findings do not support the need to lie down as alleged." (*Id.*). The ALJ further wrote:

> A consultative examination showed her tandem gait was unstable, but she was able to sit, stand and walk without an assistive device. She had good strength/range of motion in her extremities, and she was able to rise form the examination table without assistance (Exhibit 9F). On a Function Report, she noted she is able to tend to her personal care, perform minor cleaning and shop for groceries twice a month (Exhibit 6E). During a consulative evaluation, she stated she is able to tend to her personal care, prepare meals and drive (Exhibit 8F). Based on the objective finding and her reported level of activities, I find she is capable of work at the medium exertional level with additional postural and environmental limitations. This is consistent with the findings of a State agency medical consultant and none of her own providers further limited her ability to perform work activity (Exhibit 3A), I acknowledge the claimant does experience some limitations but not to the extent alleged.

(*Id.*). The ALJ also acknowledged that Baum testified to daily bouts of diarrhea and vomiting (Tr. 22, 26).

In her assessment of Baum's subjective complaints, the ALJ assessed several of the factors required under SSR 16-3p. The ALJ addressed the intensity of the pain by noting that Baum did not appear in acute distress; she addressed Baum's treatment other medications by explaining that Baum required only "conservative treatment"; and she addressed her daily

25

activities by writing that Baum was able to tend to personal care, perform minor cleaning, shop for groceries, prepare meals and drive. (*Id.*). The ALJ also found persuasive the opinion of State agency reviewing physician Leon Hughes who suggested no limitations relating to frequent restroom visits. (Tr. 25). Thus, the ALJ provided sufficient support from the record in articulating her reasoning to survive the deferential review required of this Court. I therefore do not recommend remand on this basis.

## VII.    Recommendation

Because the ALJ applied proper legal standards and supported her decision with substantial evidence, I recommend the Commissioner's final decision denying Baum's application for DIB be affirmed.

Dated: May 12, 2026

Reuben J. Sheperd
United States Magistrate Judge

---

### OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

***

Failure to file objection within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendations. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act." *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, 2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interests of justice. *See United States v. Wandashega,* 924 F.3d 868, 878-79 (6th Cir. 2019)